Sullivan v. City of Goodland.

---

No. 23,464.

E. W. SULLIVAN, *Appellant,* v. THE CITY OF GOODLAND et al., *Appellees.*

SYLLABUS BY THE COURT.

1. CONSTRUCTION OF SEWER—*Neither Condemnation Proceedings Nor Provision for Compensation for Land Taken is a Condition Precedent.* A city may appropriate land for the purpose of constructing a sewer, without condemnation proceedings and without first making compensation or providing for an assessment of damages. (*Railway Co. v. City of Hiawatha,* 95 Kan. 471, 148 Pac. 744.)

2. SAME—*Injunction Will Not Lie.* Plaintiff, claiming to be the owner of a strip of ground over which the city was proceeding to construct a storm sewer, brought an action to enjoin the city from proceeding with the work on the ground that it had no right to enter upon the land without condemnation proceedings or without first making provision for compensation. The court set aside a temporary injunction on the ground that plaintiff had no title to the land. *Held,* regardless of plaintiff's title the action cannot be maintained.

Appeal from Sherman district court; CHARLES I. SPARKS, judge. Opinion filed January 7, 1922. Modified and affirmed.

*David Ritchie,* of Salina, for the appellant.

*E. F. Murphy, Elmer E. Euwer,* and *John Hartzler,* all of Goodland, for the appellees.

The opinion of the court was delivered by

PORTER, J.: The plaintiff claimed to be the owner of land upon which the city of Goodland, in establishing a sewer system was about to construct a ditch. He brought an action to restrain the work on the ground that the city had brought no condemnation proceedings to obtain a right to enter upon his lands and had not provided compensation for his damages. He obtained a temporary injunction which, on the hearing, the court dissolved. The appeal is from that order.

The city contended that the strip of land over which it was about to construct the sewer is either a street or that it belongs to a railway company. The court made findings, from which it appears that in 1888 the owner of the land platted it as an addition to Goodland, and on the south side of the addition dedicated to public use a strip of ground parallel with and adjoining the right of way of the Chicago, Rock Island and Pacific Railway. In 1891 the legislature vacated the addition. At that time Goodland was a city of the third class. Under the provisions of the act of 1871 (Gen. Stat. 1915, § 1932), upon the vacation of a street in cities of that class, it reverts to the owners of real estate thereto adjacent on each side, in proportion to the frontage of such real estate. The court made a finding that the streets were not taken from lots abutting thereon, but from a tract of land belonging to the owner who laid out the addition, and that on July 5, 1888, one day previous to the filing of the plat, the owner deeded to the railway company a strip of land immediately south of the ground now referred to as Eighteenth street.

As a conclusion of law the court held that inasmuch as plaintiff makes no claim to title coming from the south side of the vacated street, the city was proceeding to construct its sewer on land which belongs to the railway company, and that plaintiff has no right to complain.

The first question suggested by the plaintiff in his brief is whether the effect of filing the plat and the subsequent vacation is to pass title to one-half of the street to a stranger to the plat.

Although this is an interesting question, and is involved in the grounds stated by the court as the reason for dissolving the temporary injunction, we think a more important question is whether plaintiff can maintain this action for any purpose.   The ground upon which the action was predicated appears from plaintiff's second contention in his brief, which is that a city of the second class cannot, without an assessment of damages or other proceedings, take property for the purpose of building a sewer.

It has been held that a school district may appropriate land belonging to a citizen for a schoolhouse site without first making compensation, such appropriation being for a public purpose, and means being provided for the determination of the value of the property. (*Buckwalter v. School District*, 65 Kan. 603, 70 Pac. 605.)

The plaintiff relies upon *Rolens v. Hutchinson*, 83 Kan. 618, 112 Pac. 129, where the court, speaking in general terms of the method by which a city of the first class may obtain and open a waterway, used this language:

"But the necessity, however pressing, does not warrant the taking of private property for that purpose without compensation. . . . Such property cannot be appropriated until adequate compensation is provided for or made." (p. 622.)

The court did not determine in that case that the city could not take possession of the property for the purpose of making the necessary improvements until after the condemnation proceedings, or until compensation had been made. Plaintiff's contention is fully answered in *Railway Co. v. City of Hiawatha*, 95 Kan. 471, 148 Pac. 744, where it was held that the payment of compensation for the construction of a sewer by a city is not a condition precedent. The city was proceeding to construct a sewer without first making an assessment of damages. Plaintiff brought an action to enjoin the proceedings and claimed that section 4 of article 12 of the constitution providing that "no right of way shall be appropriated to the use of any corporation until full compensation therefor be first made in money, or secured by a deposit of money, to the owner, irrespective of any benefit from any improvement proposed by such corporation," has no application to such a case and that the city was not obliged to make an assessment of damages before occupying defendant's property with the sewer. In the opinion it was said:

"This section of the constitution was not intended to apply to municipal corporations when acting as agencies of the state in the interest of the general

welfare. It was intended to apply only to public service corporations upon whose private responsibility the making of compensation depends.

"The certainty of compensation to the property owner affected by an appropriation was the subject of the constitutional restriction. Although the state cannot be sued the law does not contemplate a breach of faith on the part of the sovereign. The solvency of the state and of its municipal subdivisions is presumed in the absence of a showing to the contrary. When the taking is by a governmental subdivision of the state the public credit with the power of taxation behind it affords ample security for the fulfillment of the obligation to make compensation. Consequently when the state acts directly or mediately through the agency of a municipal corporation all that is required is that a remedy be provided to which the property owner may resort to have his proper compensation assessed and paid." (p. 472.)

The question to which plaintiff gives first place in his brief and seems to regard as the important one, is raised but incidentally in the petition. It might, in a proper case, become a vital issue. That is the question of his title. The petition asking for the injunction was predicated, of course, upon the theory that plaintiff owned the land and that defendant threatened to construct thereon a ditch for sewer purposes without condemnation proceedings and without having provided compensation for the damages plaintiff will sustain. If one who is, without question, the owner of lands upon which a city is constructing a sewer system, cannot enjoin the work merely because no proceedings have been taken to provide payment for his damages, it must be apparent that one whose title to the land in such a case is doubtful should not be permitted to tie the hands of the city and prevent the construction of a necessary improvement while he litigates in the courts the question whether he has any interest. The plaintiff, by this action, has succeeded in deferring for a year the work of establishing the sewer system.

It is clear that the petition was demurrable. The order dissolving the temporary injunction was placed by the trial court upon the ground that the plaintiff has no title. A better reason lies in the fact that the plaintiff cannot maintain the action, whether he owns the property or not.

To affirm the judgment and leave the findings stand as to title might work a serious injustice to the plaintiff in the future. For that reason the court will be directed to modify the judgment by setting aside the findings.

As so modified, the judgment is affirmed.