### No. 36,739

A. L. MILLER, PERCY L. MILLER, SADIE WALMER, MINNIE MULLEN and ERNEST D. CROSS, *Appellants,* v. HICKORY GROVE SCHOOL BOARD, DISTRICT No. 4, and FRANK R. SPRINGER, Director; C. CLAUDE COOKE, Clerk, and JOHN A. FRANCIS, Treasurer, *Appellees.*

(178 P. 2d 214)

Opinion filed March 8, 1947.

*Rolla W. Coleman* and *Raymond H. Carr,* both of Mission, were on the briefs for the appellants.

*Frank L. Hagaman,* of Kansas City, was on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action by resident taxpayers of School District No. 40 of Johnson county against the school board to enjoin defendants from issuing certain emergency warrants. A trial by the court resulted in judgment for defendants, and plaintiffs have appealed.

The legal question turns upon the interpretation of certain language in section 1 of chapter 371, Laws of 1941, now G. S. 1945 Supp. 79-2941. The title of the act reads:

"AN ACT relating to taxing districts in certain counties, authorizing such taxing districts to issue emergency warrants, and to make emergency tax levies."

The section reads:

"That whenever it shall be apparent to a majority of the members of *any board authorized to levy taxes in any taxing district in any county adjoining a United States army post or military reservation,* or to any officer solely charged with that duty therein, that the rates of levy in the particular taxing district under consideration are so limited as to be insufficient for the raising of funds necessary to supply the needs of said taxing district for general maintenance expenses for the current tax year, such officers or officer shall have the authority to issue warrants to meet such general maintenance expenses for the current tax year to the amount of money not exceeding fifty percent of the amount of money which can be raised in such taxing district by using the rates limited by law: *Provided,* That no such authority to issue warrants shall be exercised until an application for such exercise shall be made to the tax commission, which body, if the evidence submitted in support of the application shall show an emergency need for the issue of warrants for the said additional amount hereby authorized or any part thereof, is hereby empowered to order the issuance of such warrants as may be shown to be necessary, but no order for the issuance of such warrants shall be made without a public hearing before the state tax commission, and notice of such hearing shall be published in two issues of a paper of general circulation within the district applying for such authority at least ten days prior to such hearing. The notice shall be in such form as the state tax commission shall prescribe, and the expense of such publication shall be borne by the district making application: *And provided further,* That at no time shall the issuance of such warrants authorized by the tax commission in any such taxing district exceed in amount fifty percent of the amount of money that can be raised by taxation in any such district for the current tax year under the existing rates." (Emphasis supplied.)

The facts are agreed to in the pleadings or specifically stipulated as follows: That School District No. 40 is a regularly established school district of Johnson county; that the defendants named are its officers and the governing body of the school district; that they were preparing to issue emergency warrants of the school district in a sum not to exceed $10,000; that defendants claim authority to issue such emergency warrants based upon an application to and an order of the State Tax Commission; that pursuant to defendants' application, upon a notice of hearing before the State Tax Com-

mission on a date stated, the hearing was conducted and the commission made a finding of the existence of an emergency in the taxing district in that the rates of levy under which the district operates are so limited as to be insufficient for the raising of funds necessary to supply the needs of the taxing district for the general maintenance and expenses for the current year; and further found that the application complies with the law; that the allegations and statements therein contained are true, and that there is a need for an additional $10,000 in the general fund of the taxing district. An order was issued in accordance with the findings authorizing defendants to issue emergency warrants in the amounts of not to exceed $10,000.

It was stipulated that the Olathe naval base is a military reservation wholly within the boundary lines of Johnson county; that there is no military reservation lying outside of Johnson county which joins the county, and that the nearest point on the boundary line of the Olathe Naval Base is about eighteen miles from the nearest boundary line of School District No. 40.

It was the contention of plaintiffs in the court below, and their contention here, that the statute above quoted did not authorize the State Tax Commission to consider the application of defendants and to make an order authorizing the issuance of the emergency warrants. There is no contention but what the proceeding before the State Tax Commission was in proper form. The contention is that it lacked authority under the statute, the grounds being that School District No. 40 in Johnson county is not such a taxing district and so related to the military reservation as to make the statute applicable to it.

The principal legal question presented is the correct interpretation of the first four lines of the section of the statute hereinbefore quoted, which read:

"That whenever it shall be apparent to a majority of the members of *any board* authorized to levy taxes *in any taxing district in any county adjoining* a United States army post or military reservation . . ."

Appellants contend the language means that the taxing district itself must adjoin the post or military reservation, and argue that where the language of a statute admits of two interpretations attention will be given to certain rules of construction: (1) To conditions leading to the enactment, the manifest purpose of the legislature and the results that will naturally stem from the alternative

interpretations. (2) To rules of grammatical construction and the common acceptation in the use of words. (3) To application of the rule that doubts should be resolved in favor of the taxpayer.

Appellees contend that the language "in any taxing district in any county adjoining" the post or reservation is not ambiguous and does not call for the consideration of the rules suggested by appellants; hence, that it is not essential that the taxing district in question adjoin the post or reservation. We concur in this view and hold that any taxing district in a county which adjoins a military reservation may take advantage of the act if the facts justify it in doing so.

With this view it is not necessary to discuss at length the rules argued by appellants. We may say, however, that we have considered everything presented in the briefs of counsel pertaining to the rules suggested and a full discussion and examination would not justify us in reaching a different conclusion.

Appellants argue that this construction would lead to absurd results by making it possible for the county itself, a drainage district, cemetery, township, school district, incorporated city, etc., anywhere in the county which adjoins an army post or military reservation to issue such warrants and levy taxes to pay them. This result would not follow. The officers of the taxing district under this statute do not simply exercise their own judgment concerning the matter. If they conclude they need to issue such warrants they must first make application to the State Tax Commission, give notice and have a hearing, show the necessity, and obtain authority to issue such warrants, all of which was done in this case. Hence, rash or extravagant action is not likely to occur.

In making its findings in this case the commission found that the taxing district, at the regular tax rate, could not raise sufficient funds for the general maintenance expenses of the district for the current year "because of the proximity of the taxing district to" an army post or military reservation. Counsel for appellants criticize the use of the word "proximity" and point out that the commission did not specifically say whether the taxing district had to adjoin the post or reservation or be in a county which joined it, and suggest that the commission "made its own law" instead of following the statute. We shall not take space to analyze fully all the commission's findings to determine whether this criticism

is just, but assuming it to be, that fact would not defeat the validity of the commission's final order. It is well settled, of course, that the reason the court gives for its decision is immaterial if the decision it makes is correct. In short, we look to the decision rather than to the reasons for it. The commission had authority under the law to consider the application made to it, to hear the evidence, and to make a final ruling, which it did. There is no contention to the contrary. Indeed, there is no contention now that the evidence before the commission did not justify its order authorizing defendant to issue the warrants in question.

Counsel for appellants argue that the construction we have given to this statute would render it unconstitutional, making it violate article 2, section 17, of our constitution, which reads:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state."

Concededly this question was not raised in the trial court, and we might ignore it for that reason under the authority of *Fitzpatrick v. Bean*, 128 Kan. 473, 279 Pac. 7. But, passing that, we regard the point as not well taken. Counsel agree that World War II had been declared only a few months before the statute in question was enacted and that the army posts and military reservations in this state had become active for building and construction work as well as for the assembling and training of army and navy forces. We think that presented a situation where the legislature was authorized to enact legislation pertaining to conditions existing in the state near the army posts and military reservations. Among those conditions was the influx of workmen and military personnel and their families, which sorely taxed housing conditions, school facilities and other situations, which made it prudent for legislation dealing with the subject.

The other principal question in the case is whether Johnson county is a "county adjoining a . . . military reservation." It was stipulated that the Olathe naval base is a military reservation and that it lies wholly within Johnson county. Counsel for appellants argue strenuously that since the military reservation is wholly within Johnson county it cannot be adjoining it. Various definitions of the words "join" and "adjoining" are set out in the brief and decisions

are cited construing those words, which we need not take space to set out and discuss.

Counsel for appellees point out that the military reservation in question, having been taken over by the Federal government, is no longer a part of Johnson county in a governmental sense. The point is well taken.

The federal constitution (art. 1, sec. 8, cl. 17) provides:

"The Congress shall have power . . . To exercise exclusive Legislation in all Cases whatsoever, . . . over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings."

Our legislature, by G. S. 1935, 27-101 and 27-102, gave the consent of this state to the acquisition by the United States by purchase, condemnation, or otherwise, of any land in the state of Kansas, which has been, or may hereafter be, acquired for custom houses, courthouses, post offices, national cemeteries, arsenals, or other public buildings, or for other purpose of the government of the United States, and specifically provided that "exclusive jurisdiction over and within any lands so acquired by the United States shall be, and the same is hereby, ceded to the United States, for all purposes;" saving certain rights for the service of process and taxing certain property. Hence, the Olathe naval base, being a military reservation, is exclusively within the jurisdiction of the federal government, except for purposes not here important, and is taken out from under government by the laws of the state of Kansas. Crime committed within the reservation is punishable only under the laws of the federal government and in the federal courts. Even residents of the reservation are not entitled to vote at our state elections. (See *Herken v. Glynn*, 151 Kan. 855, 101 P. 2d 946, where the authorities are collected.) It is true the federal government is not required to take full jurisdiction of property it may desire for some governmental·purpose (*State, ex rel., v. Corcoran*, 155 Kan. 714, 128 P. 2d 999), but when it does take exclusive jurisdiction the area is taken out from under the control of our state laws. There is no suggestion in the record that the jurisdiction of the federal government is less than exclusive over the military reservation of the Olathe naval base. Since this reservation is wholly within Johnson county it necessarily follows that Johnson county adjoins it, not only at one place, but on all sides.

We find no error in the record. The judgment of the trial court is affirmed.

Hoch, J. (concurring): I agree that the language of the statute justifies, and perhaps makes inescapable, the construction given to it by the court. But I do not believe that the legislature intended the anomalous and illogical results that follow this construction. It seems clear that the purpose of this special taxing statute was to provide additional taxing power for taxing districts located near army posts or other military reservations because of extra burdens brought about by virtue of that proximity. For instance, school districts near army posts may have an unusual number of children attending school who come from families living at the post, but who have no taxable property within the school district. Obviously, there was occasion for legislation to give relief to districts so situated and burdened. But if that was the legislative purpose, the statute fails to give relief in cases where such relief may be most needed. Among many illustrations, here is one: County A contains a reservation located a half mile from the boundary line between it and County B. A school district in County B, on the boundary line and thus only a half mile from the reservation, may be heavily burdened because of this proximity to the reservation. But it can get no benefit under the special act because it is not in a county which adjoins a reservation. At the same time, a school district which is in County A but located at the far end of the county—perhaps twenty-five or more miles away from the reservation—would come under the special act. This illogical result was certainly not within the legislative intent. However, we have no power to disregard language of a statute where the terms are not ambiguous, simply to carry out what we think was the legislative intent, no matter how well founded our view of that intent may be. In any event, if correction is needed in the statute, that is for the legislature and not for the court.