No. 37,858

BOARD OF EDUCATION OF SCHOOL DISTRICT No. 1, CITY OF GREAT BEND, KANSAS, *Plaintiff*, v. GEORGE ROBB, Auditor of the State of Kansas, *Defendant*.

(212 P. 2d 306)

Opinion filed December 10, 1949.

*Herbert Diets,* of Great Bend, argued the cause, and *Boyce P. Hardman,* of Great Bend, was with him on the briefs for the plaintiff.

*William Paul Timmerman,* assistant attorney general, argued the cause, and *Harold R. Fatzer,* attorney general, was with him on the briefs for the defendant.

The opinion of the court was delivered by

THIELE, J.: This is an original proceeding in mandamus to compel the auditor of the state of Kansas to register bonds in the principal amount of $1,256,700, issued by the board of education of School District No. 1, city of Great Bend, under the authority of Laws of 1949, chapter 396. In his answer to the motion for the writ, the sole reason asserted by the auditor for his refusal to register the bonds is that the above statute is special legislation and unconstitutional in that it violates article 2, section 17 of the constitution of the state of Kansas, which provides:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state."

As presented by oral arguments at the submission of the cause, and by the briefs filed, the claim of unconstitutionality does not

arise from the title of the act, which need not be noted, but from limitations in the body of the act. In section one of the act, it is provided that the board of education of any city of the second class, which is located in a county having a population of not less than 27,000 nor more than 32,000, and which county has an assessed tangible valuation of more than eighty million dollars, may issue bonds for specified school purposes in an amount not in excess of *fifteen percent* of the valuation of the tangible property within such district. Other provisions need no present notice.

In a preliminary way and in a way to show the complex situation arising from acts which have been enacted, it is noted that insofar as authority of boards of education of cities of the second class to issue bonds is concerned, that prior to the enactment of the statute now under consideration, what we may call the act of general application appears as G. S. 1935, 72-1820, which fixes the bond limitation at *three and three-fourths percent* of the assessed valuation, and that there were other acts affecting only certain of such boards. See, *e. g.*, G. S. 1935, 72-1834, G. S. 1947 Supp. 72-1858, and especially G. S. 1947 Supp. 72-1851, which contains limitations quite like those presently involved and which fixes the limitation at *eight percent* of the assessed valuation of tangible property.

In view of the repeatedly declared rule that an act duly passed by the legislature is presumed to be constitutional (see cases collected in West's Kansas Digest, Constitutional Law, § 48, and Hatcher's Kansas Digest, Constitutional Law, § 16, and Statutes § 18) and that before the courts can declare it invalid, it must clearly appear to be unconstitutional (*Leavenworth County v. Miller*, 7 Kan. 479, Syl. ¶ 8; *State v. Lawrence*, 79 Kan. 234, 267, 100 Pac. 485; *Barker v. Kansas City*, 149 Kan. 696, 698, 88 P. 2d 1071) we first take note of the auditor's contention that the act in question is unconstitutional.

The auditor directs attention to certain counties in the state coming within the classification limits set forth in the statute to which reference is later made and to some of the statutes noted above, and without mentioning each case cited, recognizes the tests laid down in *Barker v. Kansas City*, supra, that:

"In determining whether a law enacted by the legislature contravenes the provisions of section 17 of article 2 of the state constitution that all laws of a general nature shall have a uniform operation throughout the state, and in all cases where a general law can be made applicable, no special law shall be enacted, the following tests are to be applied:

"(a) If a law of general form operates uniformly on all members of the class to which it applies, it is not open to the objection it is a special law if the classification is not an arbitrary and capricious one.

"(b) If a law applying to a specified classification of cities or governmental units is otherwise general in its form and its provisions are such that in the ordinary course of things the law might and probably would apply to other cities or governmental units coming within the specified classification, the law is a general and not a special law.

"(c) Although the title and form of a law may be general, whether a general or special law has been enacted is to be determined by what in the ordinary course of things must necessarily be its operation and effect." [Syl. ¶ 1, (a), (b), (c).]

The auditor also relies on *State, ex rel., v. Allen County Comm'rs,* 156 Kan. 248, 133 P. 2d 165, where it was held:

"The legislature has power to pass laws which apply to and operate uniformly on all members of a class, but the classification created must be natural and genuine. The classification cannot be an arbitrary or fictitious one but must be based upon distinctions which have a reasonable and substantial relation to the subject matter involved." (Syl. ¶ 1.)

He also directs attention to later cases such as *State, ex rel., v. Schoeppel,* 160 Kan. 396, 399, 162 P. 2d 80; *Johnson County Comm'rs v. Robb,* 161 Kan. 683, 687, 171 P. 2d 784; *State, ex rel., v. Wyandotte County Comm'rs,* 161 Kan. 700, 706, 171 P. 2d 777; *Carson v. Kansas City,* 162 Kan. 455, 177 P. 2d 212; and *Board of County Comm'rs v. Robb,* 166 Kan. 122, 132, 199 P. 2d 530; all of which recognize the rule that classifications made in a statute cannot be arbitrary or fictitious, but must be based upon distinctions which have a reasonable and substantial relation to the subject matter involved, and are germane to that subject matter.

Premised upon the rule set forth the auditor contends that before the court may say the classification made in the statute is not arbitrary and capricious, there must be some basis for distinction and that the distinction must be reasonable and germane to the purpose of the act; that the population of a county and its assessed value have nothing to do with the amount of bonds to be issued by a board of education as restricted by the valuation within the district, and that the effect of the limitation made in the act is such that it presently has application only to Barton county, with little or no likelihood of its ever being effective in any other county. The argument is somewhat illustrated by the following table showing population, assessed tangible valuation and number of second-class cities in every county of the state having a population of over 22,-

000 and less than 37,000, a leeway of 5,000 under and over the limitations set forth in the act.

| County | Second class cities | Population 1948 | 1949 | Tangible valuation by thousands 1948 | 1949 |
|--------|---------------------|-----------------|------|--------------------------------------|------|
| 1. Barton | 2 | 27,706 | 28,809 | 95,524 | 110,091 |
| 2. Butler | 2 | 32,915 | 32,940 | 65,006 | 69,716 |
| 3. Cherokee | 4 | 27,375 | 27,155 | 26,655 | 30,289 |
| 4. Cowley | 2 | 35,356 | 35,297 | 61,102 | 65,071 |
| 5. Douglas | 0 | 27,916 | 28,484 | 43,715 | 46,126 |
| 6. Labette | 2 | 31,956 | 31,932 | 36,879 | 38,605 |
| 7. Leavenworth | 0 | 31,440 | 32,003 | 33,932 | 35,496 |
| 8. Lyon | 1 | 24,742 | 25,381 | 49,170 | 51,684 |
| 9. McPherson | 2 | 23,305 | 23,260 | 64,666 | 68,365 |
| 10. Neosho | 1 | 22,436 | 22,326 | 28,450 | 29,733 |
| 11. Riley | 1 | 22,025 | 23,901 | 34,952 | 38,059 |
| 12. Saline | 0 | 34,104 | 34,870 | 59,622 | 63,369 |
| 13. Sumner | 2 | 24,091 | 24,305 | 54,943 | 56,743 |

From the above it appears that at the time of its passage there were only five counties within the population range fixed by the act; and that Barton was the only county of requisite valuation; that two of those counties had no city of the second class and that the valuation in each of the remaining two counties was under forty million dollars.

Plaintiff's argument that the statute involved is not unconstitutional and that it is entitled to have its bonds registered is summarized. After directing attention to the tests for determining constitutionality laid down in *Barker v. Kansas City*, supra, and that they were followed in *Rural High School v. Brown County Comm'rs*, 153 Kan. 49, 109 P. 2d 154, and *Johnson County Comm'rs v. Robb*, supra, it argues that classification is a legislative and not a judicial function; that the judicial function is limited to the sole question whether the classification is patently unreasonable or capricious, and not to determine whether it was the wisest or most proper, and where the question is raised if any state of facts can reasonably be conceived that will sustain it the existence of those facts must be assumed, citing *Railway Co. v. Cowley County*, 97 Kan. 155, 155 Pac. 18, where it was said:

"The function of the court is not to decide whether the classification is the wisest or best that could be made, but only to inquire whether it rests on a substantial basis and is germane to the purposes of the law." (l. c. 158.)

It further cites *Baird v. City of Wichita*, 128 Kan. 100, 276 Pac. 77, and *Thompson v. Reno County Comm'rs*, 152 Kan. 610, 106

P. 2d 700, which support a part of the above statements. See, also, *Board of County Comm'rs v. Robb,* 166 Kan. 122, 131, 199 P. 2d 530, for a discussion of the same matters.

After directing attention to decisions that in considering whether a classification is arbitrary or capricious the court must determine the question not upon proof of facts or conditions, but upon the theory that judicial notice supplies the proof (*State, ex rel., v. School District,* 140 Kan. 171, 34 P. 2d 102, and *Barker v. Kansas City,* supra, and cases cited), the plaintiff argues that factual bases of population and assessed valuation are not only common but proper for the classification made, citing *State, ex rel., v. Kansas City,* 134 Kan. 157, 4 P. 2d 422; *Rural High School v. Brown County Comm'rs,* supra; *Miller v. Hickory Grove School Board,* 162 Kan. 528, 178 P. 2d 214, and others of like tenor, and, after directing attention to certain counties, their population and assessed tangible property, makes an extended argument that a change in population or an increase in assessed valuation may bring other counties into the field of operation of the statute under consideration, and in connection therewith, reviews certain of our decisions, some of which are cited above, holding that such classifications were not unreasonable or capricious, were germane to the subject matter and were upheld.

The rules of decision of the question of constitutionality relied upon by the parties need no discussion. Those rules have been repeatedly stated, are consistent one with another, and are to be applied here. The difficulty arises from their application to the facts of which we take judicial notice pertaining to population and assessed valuations of particular counties, and which show that at the time of the passage of the act under consideration only Barton county was affected, and tending to show that in the ordinary course of things the act might or could apply, or the contrary, to other governmental units within the purview of the act, it having to be borne in mind at all times that the classification made in the act must have been based upon distinctions which have a reasonable and substantial relation to the subject matter of the act and are germane to it. Classifications based upon population or assessed valuation, or both, of a county, certainly may be said to be germane to legislation affecting the county and not arbitrary or unreasonable unless unduly restricted, but we cannot follow and approve an argument advanced by the plaintiff that school districts

in second-class cities within the population limits fixed, but with a certain high assessed valuation, are in need of a higher bond limit than others in the same population range and that the legislature took cognizance thereof. We are not concerned with the wisdom of the legislation, but that the size of the county, or the amount of its assessed valuation, has anything to do with bond limitations of a school district, or is germane thereto, does not readily appear. If it had any connection at all, it would appear the higher the valuation of the county, the higher the valuation of the school district, and thus, as by the act, an unreasonable and arbitrary classification insofar as bond limitations are concerned. Disapproval of that reasoning, however, only goes that far. While a reference to the table of statistics above will disclose there may be doubt that in the ordinary course of things any county other than Barton will come within the purview of the terms of the act, and as to many types of legislation other than for schools, it might well be said the classification made was so restrictive as to be unreasonable and arbitrary, we have in the past been more tolerant of legislation affecting schools.

In *Richardson v. Board of Education*, 72 Kan. 629, 84 Pac. 538, the principal contention was that a general act pertaining to schools could not be amended by a special act, a phase of constitutional law with which we are not presently concerned. In the course of the opinion attention was directed to article 6, section 2, of the state constitution, which provides that the legislature shall encourage the promotion of intellectual, moral and scientific improvement by establishing a system of common schools, and it was said that the schools had always been considered the subject of special legislation, and that many schools had been organized and maintained under special acts which it would have been impossible to maintain under any general law then in existence or that could have been passed and a number of such statutes were mentioned, and attention directed to *Eichholtz v. Martin*, 53 Kan. 486, 36 Pac. 1064, where the creation of a school district by special act was upheld.

In *State, ex rel., v. Board of Education*, 122 Kan. 701, 253 Pac. 251, this court considered, with other questions, a contention that a statute violated the uniformity provision of the constitutional section now involved. The subject matter of the act attacked permitted annexation for school purposes of territory outside the limits of second class cities. In holding that the statute did not violate

the uniformity clause, this court said, in substance, that it was the prerogative and duty of the legislature to enact laws to fit the changing, developing needs of the people and that the situation of the Humboldt city school district was one which might well receive legislative attention; that the statute did not necessarily and exclusively apply to the Humboldt situation; that there were many counties in which there were two cities of the second class and with the growth of the state the future was bound to see that situation multiplied; that even if the situation at Humboldt was peculiarly unique at the time, a similar situation could develop anywhere at anytime. The opinion continues:

"Because of the all-important fact that school district populations and their needs for educational facilities cannot successfully be put in straitjackets and compelled to develop within artificial lines and limits, amendments to school laws occupy much of the time of the legislature and fill a very considerable part of our session laws.

"It is not easy to see how such numerous and frequent changes in the provisions of our school law can be dispensed with. The act here assailed is not fundamentally different from the common run of statutes which this court has been required to scrutinize time and again in the last half century." (l. c. 707.)

And see, also, *Rural High School v. Brown County Comm'rs*, supra, where a statute pertaining to schools, attacked on the ground that it violated article 2, section 17, and other sections of the constitution, was upheld.

On the oral presentation of this cause, the plaintiff expressly disclaimed that the act under attack could be justified on the ground it was a special act, and held firmly to its contention the act was a general act meeting all requirements for its full validity, a logically sound position (*State, ex rel., v. School District*, supra). We shall not discuss this phase further than to say it is obvious the legislation was not intended to be a special act where a general act could not be made applicable.

By way of summary it may be said that it it somewhat difficult to say that the classification made in the statute under consideration is, in and of itself, entirely germane to the subject matter of the statute, but bearing in mind the liberality accorded to school legislation, we cannot reach the conclusion that it clearly appears the statute is unconstitutional, and for that reason judgment must be and it is rendered for the plaintiff.

As has been previously pointed out, the only reason assigned by

the auditor for his refusal to register the bonds was his doubt as to the constitutionality of the statute under which the bonds were issued, and for that reason no formal writ will issue at this time and no costs will be imposed (*City of Council Grove v. Schmidt,* 155 Kan. 515, 521, 127 P. 2d 250; *Stevens v. McDowell,* 151 Kan. 316, 323, 98 P. 2d 123, and cases cited) and it is so ordered.