JUDGE DUVALL
delivered the opinion op the court:
The object of this suit was to settle the estate of James Ford, deceased, and to ascertain and adjust the advancements which had been received by each of his children.
It appears that the decedent owned a valuable farm in the county of Bourbon, containing about 460 acres, besides a number of valuable slaves, stock, &c.; that in the beginning of the year 1847, the decedent placed the farm, slaves, stock, and other property, into the hands of his two sons, William aiid James Ford, who continued to occupy and use the same until the death of their father in 1856 — a period of about nine years. The commissioner to whom the case was referred ascertained the balance due by William and James Ford, for the rents and hires of the farm, slaves, &c., after deducting the reasonable expenses of the family, to be $6,550. The commissioner considered that for the first four years of the period mentioned, the profits of the farm, &c., were not more than equal to the support of the family, consisting of William and James Ford, their father and mother, and two sisters. One of the sisters married in October, 1850, and the other in April, 1852.
Exceptions taken by the parties on both sides to the report of the commissioner having been overruled, the court below rendered a judgment in conformity with the report, and from that judgment William and James Ford have appealed.
They insist that they were not chargeable with the rents and profits of the lands and slaves as an advancement, because, as they contend, they took possession of, and used the property, under a contract between their father and themselves, by which they were to support and pay all the expenses of their father and his family, and in consideration of that agreement, he was to let them have the use of the land and slaves and other property, as long as he lived, and all that they could make over and above such support and expenses.
Four witnesses testify upon the subject of the alleged contract between the father and the two sons. They all state, in very nearly the same language, that they heard the old man say he had given up to James and William the farm, stock* *583 and bands, to make all they conld upon it, and were to have all they could make, after supporting the family, and paying all the necessary expenses of the farm, &c. These and similar declarations made by the decedent in his lifetime constitute the only proof touching the agreement or arrangement between him and his sons as to the matter in contest.
Whether, upon this proof, the appellants are chargeable with the profits of the farm, &c., as ascertained by the commissioner, as an advancement, or whether; as matter of law, they are entitled to those profits in virtue of the contract relied upon, is the principal inquiry presented by the record.
The death of the intestate having occurred in 1856, his estate must be settled and distributed according to the provisions of the Revised Statutes, as was expressly decided by this court in the case of Clarke, &c., vs. Clarke, (17 B. Mon., 705.)
By the 17th section of the chapter on Descent and Distribution, (.Revised Statutes, 282,) it is provided, “ that any real or personal property or money, given or devised by a parent or grandparent to a descendant, shall be charged to the descendant or those claiming through him, in the division and distribution of the undevised estate of the parent or grand-parent; and such party shall receive nothing further therefrom until the other descendants are made proportionatey equal with him, according to his descendible and distributable share of the whole estate, real and personal, devised and undevised.”
“ The maintaining or educating, or the giving of money to a child or grand-child, without any 'view to a portion or settlement in life, shall not be deemed an advancement.”
The leading object of this statute was to secure a perfect equality among the descendants of a parent or grand-parent, dying intestate, in the distribution of his estate. And in-conformity with this obvious policy of the legislature, it was-decided by this court, in the case of Clarke vs. Clarke, supra, that the ancestor cannot, by a mere declaration of his intention, either make that an advancement which is not such by law, or exempt one of his children from liability to account for money or property he may have given such child, and with which the-statute makes him chargeable. This can only be effected by a *584 •will, duly executed, disposing of the whole of the property of the ancestor. And that any other construction of the statute would defeat the purpose of equality designed to be effected by it, and would directly violate the spirit and meaning of the statute on wills.
According to the equitable rule of distribution thus clearly defined, everything of value which a child may have received as a gift from his father, in whatever it may consist, or with whatever motive or intention it may have been given by the parent, must be accounted for as an advancement, unless the subject of the gift be embraced by the exception contained in the latter clause of the statute. And that a distributee is chargeable with the rents of lands and hires of slaves which may have been occupied and used by him in the lifetime of his father is virtually settled in the case cited. This point, however, has not been controverted in argument.
That the arrangement under which the appellants took possession and had the use of the lands and slaves in contest, was suggested alone by the desire of the father to aid his younger sons in the outset of their career, and to secure to them, “with a view to a settlement in life,” the great pecuniary advantages which he must have foreseen would result from the arrangement, cannot be doubted. All the facts and circumstances connected with the transaction impress upon it the unmistakable characteristics of a pure gift, to the extent of the profits of the large and valuable estate which was “given up," in the language of the witnesses, to the appellants, charged only with the support of the family, which consisted, since the year 1852, of their aged father and' mother, whose personal expenses amounted to almost nothing, as shown by the proof. To denominate this arrangement a contract, in any legal or proper sense of the term, would be doing manifest violence to all the proof in the case.
We are satisfied, therefore, that the appellants were properly charged with the balance ascertained by the commissioner, of the profits arising from the rents and hires of the lands and slaves, as an advancement.
*585 Numerous objections to the details of the accounts as settled by the commissioner, have been relied on by the parties on both sides. The questions presented by this class of objections may be readily disposed of. A careful examination of the record has satisfied us that no injustice has been done the par ties on either side, and that the general results arrived at by the commissioner are sustained by the proof, and are as nearly accurate as the nature of the case admits of.
The answer of the appellants to the interrogatories embodied in the petition was not authenticated in the manner required by the Code, nor were the interrogatories such as authorized the answer to them to be read as a deposition according to the Code. (Burnett, &c., vs. Garnett, &c., 18 B. Mon., 70.)
Judgment affirmed upon the original and cross-appeal.