THOMAS W. NEWCOMB & others *vs.* INHABITANTS OF ROCKPORT & others.

Suffolk.   November 13, 1902. — February 27, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, & HAMMOND, JJ.

*School.   Rockport.   Words,* "Needful buildings."

The town of Rockport is not bound to build a schoolhouse on Thatcher's Island for the children of the lighthouse keepers there, even if it has the right to do so.

*Semble,* that a town is not bound to build and maintain a schoolhouse on a small island within its territorial limits on which a few persons live having children of school age.

The town of Rockport is not bound to furnish a means of conveyance for school children from Thatcher's Island or from Straitsmouth Island to the town.

Under R. L. c. 25, § 15, authorizing towns to appropriate money " for conveying pupils to and from the public schools . . . the same to be expended by the school committee in its discretion ", a town is not obliged to make such an appropriation, and, if it does, the school committee is not bound to act.

LATHROP, J.    This is a petition for a writ of mandamus, brought against the town of Rockport and the school committee of that town, by the lighthouse keepers on Thatcher's Island and Straitsmouth Island to compel the town to provide and maintain a sufficient number of schoolhouses, properly furnished and conveniently located for the accommodation of the children of the petitioners, and to compel the school committee to procure a suitable place for the schooling of these children, together with fuel and all other things necessary for the comfort of the pupils therein.    The case comes before us by reservation upon the petition and answer, and an agreed statement of facts.

The two islands are off the coast of Cape Ann, and are both within the limits of the town of Rockport.    Thatcher's Island contains about eighty acres, and is about a mile distant from the mainland.    Straitsmouth Island contains about forty acres.    The only residents on these islands are the lighthouse keepers and their families.    When the petition was filed there were seven children on Thatcher's Island and one on Straitsmouth Island, all of school age.

Before the acts hereinafter referred to, these islands were the property of the Commonwealth.    See, as to Thatcher's Island, Prov. Sts. 1770–71, c. 35 ; 5 Prov. Laws, (State ed.) 137.    The St. of 1790, c. 4, entitled " An act for granting to the United States of America the several public lighthouses within this Commonwealth," begins " That there be and hereby are granted unto the United States of America the lighthouse situate on Lighthouse Island, in the harbor of Boston, together with the lands and tenements thereunto belonging, the property of this Commonwealth, with the jurisdiction of the same; also, the two lighthouses situate on Thatcher's Island, so called, in the county of Essex, together with the lands and tenements thereunto belonging, the property of this Commonwealth, with the jurisdiction of the same."    The act then proceeds to set forth other lighthouses, and concludes in § 2 with three provisos: 1st.  " That if the United States shall, at any time hereafter, neglect to keep lighted, and in repair, any one or more of the lighthouses aforesaid, that then the grant of such lighthouse or lighthouses, so neglected, shall be void and of no effect."    2d.  " That all civil and criminal processes, issued under the authority of this Com-

monwealth or any officers thereof, may be executed on any of said lands or in any of said buildings, in the same way and manner as if the jurisdiction had not been ceded." And 3d. " That if the United States shall, at any time hereafter, make any compensation to any one of the United States for the cession of any lighthouse heretofore, or which may be hereafter made to the United States; that then, like compensation be made to this Commonwealth by the United States, for the cession of the lighthouses aforesaid, in proportion to their respective values." It would seem from this last proviso that the lighthouses on Thatcher's Island were granted to the United States without compensation, and there is nothing in the case before us to show whether compensation for them has ever been made.

The St. of 1835, c. 151, entitled " An Act to cede to the United States the jurisdiction over Straitsmouth Island," provides: " That the jurisdiction over Straitsmouth Island, near the east-ern point of Cape Ann, in this Commonwealth, be, and hereby is granted to the United States of America, for the sole purpose of erecting and maintaining a lighthouse on the same; provided, that this Commonwealth shall retain, and hereby does retain, concurrent jurisdiction with the United States, in and over said land, so far as that all civil and criminal processes issued under the authority of this Commonwealth, or any officer thereof, may be executed on any part of said island, or in any building which may be erected thereon, in the same way and manner, as if jurisdiction has not been granted as aforesaid; and provided also that all persons who shall dwell upon said tract of land, shall be deemed and taken to be inhabitants of the town of Gloucester in this Commonwealth, and shall there do the same duties, and have and enjoy the same privileges as other inhabitants of said town, saving that the keeper of said lighthouse shall not be liable to serve as a juror, or to perform military duty."

So far as the second proviso in the act relating to Thatcher's Island, and the first proviso in the act relating to Straitsmouth Island are concerned, it is settled that the purpose of such provisos is to prevent the territory ceded from becoming a sanctuary for debtors and criminals, and not for the purpose of reserving jurisdiction on the part of the State of an offence committed within the territory. *Commonwealth* v. *Clary*, 8 Mass. 72.

*United States* v. *Cornell*, 2 Mason, 60.	*Mitchell* v. *Tibbetts*, 17 Pick. 298.	*Opinion of Justices*, 1 Met. 580.	*Fort Leavenworth Railroad* v. *Lowe*, 114 U. S. 525, 533.

In *Opinion of Justices*, 1 Met. 580, in reply to the question, "Are persons residing on lands purchased by, or ceded to, the United States, for navy yards, arsenals, dock yards, forts, lighthouses, hospitals, and armories, in this Commonwealth, entitled to the benefits of the State common schools for their children, in the towns where such lands are located?" the justices confined their opinion to the case of persons residing on lands purchased by, or ceded to, the United States for navy yards, forts and arsenals, where there is no other reservation of jurisdiction to the State than the one relating to process, and expressed the opinion that such persons were not entitled to the benefits of the common schools for their children.

It was suggested in the opinion that a distinction might be drawn between a case where jurisdiction was ceded for works of a purely military and naval character, connected with the defence of the country and operations of war, where the jurisdiction would be exclusive, with the exception of the process clause above mentioned, and a case where the object of the cession of jurisdiction was of a civil nature.

It may be doubted, however, whether this distinction is consistent with the view of the Supreme Court of the United States.

Article 1, § 8, of the Constitution of the United States declares that Congress shall have power "to exercise exclusive legislation in all cases whatsoever" over such district as may become the seat of government of the United States, "and to exercise like authority over all places purchased by the consent of the legislature of the State in which the same shall be, for the erection of forts, magazines, arsenals, dock yards, and other needful buildings."

The term "needful buildings" in the Constitution is now considered to include all buildings required for public use; and it is now settled that land within a State may be taken by the United States by the right of eminent domain, with or without the consent of a State. *Kohl* v. *United States*, 91 U. S. 367. Without considering the question whether a State would have

jurisdiction over land so taken, it is enough to say that the distinction which now prevails is between land purchased of a State with the consent of its Legislature, over which, by the terms of the Constitution, the jurisdiction of the United States is exclusive, and land over which the State merely cedes jurisdiction. In the latter case, if the State attaches conditions, their validity depends upon whether they interfere with the use for which the jurisdiction is ceded.

The subject matter of this discussion is fully considered in *Fort Leavenworth Railroad* v. *Lowe*, 114 U. S. 525, where the State of Kansas ceded to the United States exclusive jurisdiction over a military reservation, reserving to the State "the right to tax railroad, bridge, or other corporations, their franchises and property on said reservation." It was held that a railroad crossing the reservation could be taxed by the State for its property within the reservation. On p. 539, it is said by Mr. Justice Field: "Where, therefore, lands are acquired in any other way by the United States within the limits of a State than by purchase with her consent, they will hold the lands subject to this qualification: that if upon them forts, arsenals, or other public buildings are erected for the uses of the general government, such buildings, with their appurtenances, as instrumentalities for the execution of its powers, will be free from any such interference and jurisdiction of the State as would destroy or impair their effective use for the purposes designed. Such is the law with reference to all instrumentalities created by the general government. Their exemption from State control is essential to the independence and sovereign authority of the United States within the sphere of their delegated powers. But, when not used as such instrumentalities, the legislative power of the State over the places acquired will be as full and complete as over any other places within her limits." See also *United States* v. *Chicago*, 7 How. 185; *Chicago, Rock Island & Pacific Railway* v. *McGlinn*, 114 U. S. 542; *Benson* v. *United States*, 146 U. S. 325; *Chappell* v. *United States*, 160 U. S. 499; *Palmer* v. *Barrett*, 162 U. S. 399; 6 Op. Att. Gen. 577; 10 Op. Att. Gen. 34.

Conceding, for the purposes of the case, that the United States has not exclusive jurisdiction over the islands in ques-

tion, it by no means follows that the prayer of the petitioners should be granted. The petitioners contend that the town ought either to build a schoolhouse on Thatcher's Island or to provide suitable transportation for the scholars. We are of opinion that the town is not bound to do either. It is agreed that on the mainland the town of Rockport provides and maintains a sufficient number of schoolhouses, properly furnished and conveniently located for the accommodation of all children therein who are entitled to attend the public schools. This being so, we are of opinion that the town has done its whole duty so far as the building of schoolhouses is concerned. If a few persons happen to live on a small island, it cannot be expected that the town within the territorial limits of which the island is, is bound to build and maintain a schoolhouse for their benefit, especially where, as here, it does not appear that the town would have a right to build a schoolhouse, without authority derived from the Commonwealth, which owned the islands when the grants were made to the United States, and which, for aught that appears, may own them now.

By the R. L. c. 25, § 15, a town may appropriate money " for conveying pupils to and from the public schools, . . . the same to be expended by the school committee in its discretion." See St. 1869, c. 132. But a town is not under any obligation to make such an appropriation, nor, if it does, is the school committee bound to act. Moreover, it is agreed that " access from these islands to the mainland is always inconvenient, and at certain seasons of the year is impossible."

*Petition dismissed.*

*H. H. Newton,* for the petitioners.
*S. D. York,* for the respondents, submitted a brief.