## Schwartz, Appellant, v. O'Hara Township School District.

Argued September 29, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Roger P. Marquis*, Washington, D. C., with him *John W. McIlvaine*, U. S. Attorney, *Irwin A. Swiss* and *D. Malcolm Anderson, Jr.*, Assistant U. S. Attor-

neys and *Arthur E. Ashton*, Chief Attorney, Veterans Administration, for appellants.

*D. S. Thomas*, with him *Campbell, Houck & Thomas*, for appellees.

OPINION BY MR. JUSTICE JONES, November 24, 1953:

This is a class action in mandamus upon a case stated. The question of law involved is whether or not the minor children of school age residing on the grounds of the Veterans Administration Hospital (a Federal area) in O'Hara Township, Allegheny County, are entitled to free education in the public schools of the Township (a district of the third class) or in schools of other districts at the cost and expense of the Township School District. The learned court below denied the writ and the plaintiff has appealed.

The agreed-upon facts show the following. By Act of July 2, 1923, P.L. 987, 74 PS §§ 91, 92, the Commonwealth of Pennsylvania ceded exclusive jurisdiction of some 147 acres of land situate in O'Hara Township to the United States for the construction thereon of a veterans hospital under the control and supervision of the Veterans Administration. The only reservation to the Commonwealth was of concurrent jurisdiction within the ceded area for the service of civil process and of criminal process for crimes committed without the area. By Act of Congress of October 9, 1940, 54 Stat. 1059 (commonly known as the Buck Act), reenacted by codification July 30, 1947, 61 Stat. 641, 4 U.S.C. §§ 105, 106, the Federal Government restored to any State or any duly constituted local taxing authority the right to levy and collect *sales* and *income* taxes against the residents of Federal areas to the same extent and with the same effect as though such areas were not Federal property. By

Act of June 25, 1947, P.L. 1145, as amended, 53 PS § 2015.1 et seq., the Pennsylvania legislature authorized various political subdivisions of the Commonwealth (including school districts of the third class) to levy and collect, inter alia, *sales* and *income* taxes so long as such type of tax was not imposed by the Commonwealth. At the time of the institution of this action, O'Hara Township School District had not levied either an income or a sales tax. Furthermore, the passage of the Pennsylvania Consumers Sales Tax Act of July 13, 1953, 72 PS § 3407-101 et seq., automatically precluded thenceforth the levy of a *sales* tax by a political subdivision of the State.

There are 189 persons in residence on the grounds of the Veterans Administration Hospital in O'Hara Township whose presence there is essential to the proper maintenance and operation of the establishment. Eight children of school age also reside on the hospital grounds. Contiguous to O'Hara Township is Aspinwall Borough, and children of the Township whose homes are closer to the schools of the Borough attend the Aspinwall schools, their tuition being paid by the O'Hara Township School District. The eight children residing on the hospital grounds attend the Aspinwall schools, but, to date, their tuition has been paid by their parents. O'Hara Township School District has refused either to admit such children to the schools of that District or to pay their tuition at the schools of Aspinwall Borough.

The well-reasoned and cogent opinions of the learned court below completely and correctly disposed of the plaintiff's contentions. Basically, it is the Buck Act which prompted the appellant's exertion in the premises. He fails, however, to point out wherein that Act was intended to, or did, impose liability upon local political subdivisions, charged with the main-

tenance and administration of public schools, to provide free education for children residing with their parents on Federal areas located within such political subdivisions. The Buck Act merely served to render residents of Federal areas liable for certain specified types of taxes when levied by local political subdivisions containing such areas within their geographical limits.

In 1841 the House of Representatives of Massachusetts, in accordance with that State's constitutional practice, requested an opinion of the Justices of the Supreme Judicial Court of the State on the following question, inter alia,—"1. Are persons residing on lands purchased by, or ceded to, the United States, for navy yards, arsenals, dock yards, forts, light houses, hospitals, and armories, in this Commonwealth, entitled to the benefits of the State common schools for their children, in the towns where such lands are located?" The Justices answered the question in the negative: see *Opinion of Justices*, 1 Metc. 580 (Mass. 1840). Sixty-two years later, the Supreme Court of Massachusetts gave decisional effect to the above-mentioned opinion of the Justices in the case of *Newcomb et al. v. Inhabitants of Rockport et al.*, 183 Mass. 74, 66 N.E. 587. In the *Newcomb* case lighthouse keepers on two small islands (Federal areas) lying off the coast of Cape Ann but within the geographical limits of the town of Rockport sought by mandamus to compel the school committee of Rockport to provide their children with free public education and transportation for school attendance. The court held that the school committee was under no such duty and, accordingly, denied the writ. The same question does not appear to have been passed upon elsewhere and we believe that the law, as thus declared, continued so to be at the time of the enactment of the Buck Act.

No intent on the part of Congress to impose upon local school districts the cost of public education for the children of residents of Federal areas, lying within such districts, is to be deduced from anything contained in the Buck Act. Indeed, the Federal policy as elsewhere declared is precisely to the contrary. By Act of September 30, 1950, c. 1124, Section 1, Public Law 874, 64 Stat. 1100, 20 U.S.C. § 236, Congress extended aid to local educational agencies affected by Federal activities and formally stated that "In recognition of the responsibility of the United States for the impact which certain Federal activities have on the local educational agencies in the areas in which such activities are carried on, the Congress hereby declares it to be the policy of the United States to provide financial assistance (as set forth in the following sections of this Act) for those local educational agencies upon which the United States has placed financial burdens . . . ." Since O'Hara Township School District does not afford educational facilities for the children resident on the grounds of the Veterans Hospital, it is, of course, not entitled to the Federal aid provided by the statute above-cited. But, neither does that Act impose upon any local political subdivision the responsibility of supplying such facilities, and quite understandably so. Many of the large Federal installations over the country for military and other national purposes are designedly located in sparsely populated rural communities. To burden them with the duty of furnishing free educational facilities for the children resident on such Federal areas would be as oppressive as it would be unfair. The appellant's real concern in the instant case is not to have the specified children attend the Township's schools but to have the Township School District pay the tuition for their attendance at the Aspinwall Borough schools.

The appellant argues that, with the subjection by the Buck Act of the residents of Federal areas to local sales and income taxes, such persons therewith became entitled to enjoy all of the facilities which a local political subdivision in its normal operations furnishes even though it neither levies nor collects a tax from the residents of a Federal area which is the situation in the instant case. In support of his argument, the appellant relies on certain language in the opinion for this court in *Kiker v. Philadelphia*, 346 Pa. 624, 632, 31 A. 2d 289, cert. denied 320 U.S. 741 (1943). The particular expression in the *Kiker* case to which the appellant points was patently a dictum, but, more important, the decision in that case is not presently germane. All that was decided in the *Kiker* case was that the City of Philadelphia could lawfully collect a tax on the wages (income) of a New Jersey resident employed at the League Island Navy Yard, a Federal area within the geographic confines of Philadelphia. Obviously, that was an essentially different situation. Here, the plaintiff has not been and is not being taxed by O'Hara Township School District.

As the learned judge of the court below pertinently observed, what the plaintiff evidently seeks to bring about is the imposition by O'Hara Township School District of an income tax on the citizens of the Township as well as on the 189 residents of the Federal area in order that the schooling of the eight children on the Federal area may be at the expense of the Township School District. Such a result would be unfair to most of the resident personnel on the Federal area as well as to the citizens of the Township generally. Taxes on real estate are the primary source of revenue for rural school districts in Pennsylvania. For such imposts, the residents of Federal areas are

not liable even indirectly as an element of rent; *their* landlord is immune to local real property taxes.

The appellant's further contention is that the children here under consideration are residents of the O'Hara Township School District within the meaning of the Public School Code of 1949 (Act of March 10th, P. L. 30) and are, therefore, entitled to attend the Township's schools free of charge. In support of this contention the appellant cites Sec. 1301 of the Public School Code (24 PS §13-1301) which declares that "Every child, being a resident of any school district, . . . may attend the public schools in his district, . . ." and Sec. 1302 which provides that "A child shall be considered a resident of the school district in which his parents or the guardian of his person resides." But, neither the parents nor the guardians of these children reside in O'Hara Township. To be a resident of a particular political subdivision of a State a person must reside on land over which the State has jurisdiction. It has long been held that persons living on Federal reservations are not residents of the States wherein such reservations are situated.[1] In the present instance, the Federal Government has exclusive jurisdiction of the area of O'Hara Township on which the Veterans Administration Hospital is located: Constitution of the United States, Art. I, Section 8, Cl. 17; and *Fort Leavenworth Railroad Co. v. Lowe,* 114 U.S. 525. Nor is such jurisdiction impaired in the slightest degree by reason of the minor reservation in the act of cession of concurrent state jurisdiction merely for service of process. In *Fort Leavenworth Railroad Co. v. Lowe,* supra, the Supreme Court said at pp. 532-533,—"When the title is acquired by purchase by consent of the Legislatures of the States, the federal jurisdiction is exclusive of all

---

[1] See Note, Federal Areas: The Confusion of a Jurisdictional-Geographical Dichotomy, 101 U. of Pa. L. Rev. 124 (1952).

State authority. This follows from the declaration of the Constitution that Congress shall have 'like authority' over such places as it has over the district which is the seat of government; that is, the power of 'exclusive legislation in all cases whatsoever.' Broader or clearer language could not be used to exclude all other authority than that of Congress; and that no other authority can be exercised over them has been the uniform opinion of Federal and State tribunals, and of the Attorneys General."

However, the appellant points to language in a more recent decision of the Supreme Court (*Howard v. Commissioners*, 344 U.S. 624) concerning the limited validity of the "fiction of a state within a state" and argues that the Veterans Administration Hospital area is a part of the Commonwealth of Pennsylvania and of the O'Hara Township School District and that, consequently, the plaintiff is a resident of Pennsylvania with a right to the free education of his child in the public schools of the Township. There is nothing in the *Howard* case to warrant any such conclusion. The contention in that case was that the City of Louisville could not annex contiguous land which embraced a Naval Ordnance Plant because of the exclusive Federal jurisdiction over the plant area. The Supreme Court held otherwise and its language in context is an effective refutation of the appellant's argument. The Court said at pp. 626-627,—". . . In rearranging the structural divisions of the Commonwealth, in accordance with state law, the area became a part of the City of Louisville, just as it remained a part of the County of Jefferson and the Commonwealth of Kentucky. A state may conform its municipal structures to its own plan, so long as the state does not interfere with the exercise of jurisdiction within the federal area by the United States. . . . A change of

municipal boundaries did not interfere in the least with the jurisdiction of the United States within the area or with its use or disposition of the property. The fiction of a state within a state can have no validity to prevent the state from exercising its power over the federal area within its boundaries, so long as there is no interference with the jurisdiction asserted by the Federal Government." The Court further said (p. 627),—"Even though the Ordnance Plant is within the boundaries of the City of Louisville pursuant to the annexation, exclusive jurisdiction over the area still remains with the United States, except as modified by statute." Manifestly, there is nothing in the foregoing to suggest that the concept of "a state within a state" lacks vigor when related to the exclusiveness of Federal jurisdiction over ceded areas.

The case of *Arapajolu v. McMenamin*, 113 Cal. App. 2d 824, 249 P. 2d 318, which appellant cites, is not in point. In that case the California court held residents of a Federal military reservation to be residents of that State for the purpose of voting. The qualifications for voting are matters for State determination and regulation. A State may enfranchise whomsoever it chooses. But that cannot affect the exclusiveness of Federal jurisdiction over Federal areas and thereby a resident of such an area is not a resident of the State containing the area. Moreover, there is authority directly contrary to the ruling in the *Arapajolu* case, supra: see *McMahon v. Polk*, 10 S.D. 296, 73 N.W. 77; *In re Town of Highlands*, 22 N.Y. Supp. 137; and *Sinks v. Reese*, 19 Ohio St. 306, to the effect that residents of a Federal area are not residents of the State for the purpose of voting. The *Sinks* case, incidentally, was cited with approval by the Supreme Court in *Fort Leavenworth Railroad Co. v. Lowe*, supra.

The writ of mandamus was properly refused.

Judgment affirmed.