## Education of Children on Federal Lands

JOHN D. KILLIAN, 3RD, Deputy Attorney General, and ANNE X. ALPERN, Attorney General, May 4, 1960. —You request to be advised as to the responsibility of the Commonwealth to reimburse school districts on account of children of school age living on Federal land located within such school districts.

Several sections of the Public School Code of March 10, 1949, P. L. 30, as amended, bear upon the problem: Section 1327, 24 PS §13-1327, provides that every child of compulsory school age having a legal residence in this Commonwealth is required to attend school; section 2502, 24 PS §25-2502, provides that State reimbursements to school districts on account of instruction are payable for resident children enrolled in the public schools, and section 1302, 24 PS §13-1302, provides that a child shall be considered a resident of the school district in which his parents or the guardian of his person resides.

In Schwartz v. O'Hara Township School District, 375 Pa. 440, 99 A. 2d 621 (1953), the Supreme Court of Pennsylvania held that children residing on the grounds of a Veterans' Administration hospital were not entitled to a free education in the public schools of the district in which the Federal area was located. The Commonwealth, by the Act of July 2, 1923, P. L. 987, 74 PS §§91, 92, had ceded *exclusive* jurisdiction of the land in question to the Federal Government, but retained "concurrent" jurisdiction with the United States within the ceded area for the service of all

civil process and of criminal process for crimes committed within the area. The Supreme Court found that "it has long been held that persons living on Federal reservations are not residents of the States wherein such reservations are situated", and then stated, at page 447:

". . . In the present instance, the Federal Government has exclusive jurisdiction of the area of O'Hara Township on which the Veterans Administration Hospital is located: Constitution of the United States, Art. I, Section 8, Cl. 17; and *Fort Leavenworth Railroad Co. v. Lowe,* 114 U. S. 525. Nor is such jurisdiction impaired in the slightest degree by reason of the minor reservation in the act of cession of concurrent state jurisdiction merely for service of process. . . ."

This rule is conceded by the Federal Government. In "A Text of the Law of Legislative Jurisdiction," part II, Report of the Interdepartmental Committee for the Study of Jurisdiction over Federal Areas Within the States (United States Government Printing Office) (June 1957), the following discussion is found, at page 4:

"The State no longer has the authority to enforce its criminal laws in areas under the exclusive jurisdiction of the United States. Privately owned property in such areas is beyond the taxing authority of the State. It has been generally held that residents of such areas are not residents of the State, and hence not only are not subject to the obligations of residents of the State but also are not entitled to any of the benefits and privileges conferred by the State upon its residents. Thus, residents of Federal enclaves usually cannot vote, serve on juries, or run for office. They do not, as a matter of right, have access to State schools, hospitals, mental institutions, or similar establishments. The acquisition of exclusive jurisdiction by the Federal Government renders unavailable to the residents of the

affected areas the benefits of the laws and judicial and administrative processes of the State relating to adoption, the probate of wills and administration of estates, divorce, and many other matters. Police, fire-fighting, notarial, coroner, and similar services performed by or under the authority of a State may not be rendered with legal sanction, in the usual case, in a Federal enclave."

The question before us becomes whether the rule of the Schwartz case applies to all types of Federal properties or is limited to instances where the Federal Government has exclusive jurisdiction. We are of the opinion that the rule must be limited.

The Constitution of the United States provides for two types of Federal landholding. Article IV, sec. 3, clause 2 empowers Congress to regulate land held in trust for the States, and article I, sec. 8, clause 17, gives power to Congress:

"To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by cession of particular States and the acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-yards, and other needful Buildings;"

Prior to 1875, the Federal Government acquired the land it needed by the latter method of purchase with consent of the State. Consent usually contained a reservation of jurisdiction to serve civil and criminal process to prevent the places purchased from becoming a sanctuary for fugitives from justice: Manlove v. McDermott, 308 Pa. 384 (1932). In 1875, the Supreme Court of the United States in Kohl v. United States, 91 U. S. 367 (1875), upheld the right of the Federal

Government to acquire land by eminent domain. Later, in Fort Leavenworth Railroad Company v. Lowe, 114 U. S. 525 (1885), the Supreme Court held that when land is acquired other than by purchase with consent, the States, in ceding jurisdiction to the Federal Government, can reserve such powers and rights as are not inconsistent with and do not impinge upon the effective use of the property for the purpose intended. More recently, it has been decided that a State may reserve powers other than the rights to serve process (James v. Dravo Contracting Co., 302 U. S. 134 (1937)), and that a State may cede jurisdiction over lands acquired for a purpose not specified in article I, sec. 8, of the United States Constitution. Further, in Silas Mason Co. v. Tax Commission of Washington, 302 U. S. 186 (1937), it was held that even though a Federal area was acquired with the unqualified consent of a State, the Federal Government may refuse to exercise exclusive jurisdiction and may decline to accept such jurisdiction, in which case the area will remain subject to the ordinary jurisdiction of the State.

In Fort Leavenworth Railroad Company v. Lowe, supra, where it was expressly recognized that a cession act may contain a reservation of the power to tax private property situated within the Federal area, Mr. Justice Field described Federal landholding a *proprietorial* capacity as follows, at page 531:

". . . The consent of the States to the purchase of lands within them for the special purposes named is, however, essential, under the Constitution, to the transfer to the general government with the title, of political jurisdiction and dominion. Where lands are acquired without such consent, the possession of the United States, unless political jurisdiction be ceded to them in some other way, is simply that of an ordinary proprietor. The property in that case, unless used as a means to carry out the purposes of the govern-

ment, is subject to the legislative authority and control of the States equally with the property of private individuals."

In Collins v. Yosemite Park & Curry Co., 304 U. S. 518 (1938), the United States Supreme Court said, on page 528:

". . . The States of the Union and the National Government may make mutually satisfactory arrangements as to jurisdiction of territory within their borders and thus in a most effective way, coöperatively adjust problems flowing from our dual system of government. Jurisdiction obtained by consent or cession may be qualified by agreement or through offer and acceptance or ratification. It is a matter of arrangement. These arrangements the courts will recognize and respect."

In the James case, supra, this significant language appears, at page 148:

"The possible importance of reserving to the State jurisdiction for local purposes which involve no interference with the performance of governmental functions is becoming more and more clear as the activities of the Government expand and large areas within the States are acquired. There appears to be no reason why the United States should be compelled to accept exclusive jurisdiction or the State be compelled to grant it in giving its consent to purchases."

The quotations above indicate that the extent of jurisdictional control which the Federal Government retains or acquires over land may vary from the extreme of exclusive jurisdiction to a mere proprietorial interest in land where the State retains all ordinary legislative jurisdiction over the area and the Federal Government controls the land in the same way as any private owner might control his land. The normal situation of dual sovereignty is that of proprietorial juris-

diction where the power of the Federal Government is comparatively small and strictly limited. The furthest departure from this norm is found in cases of exclusive jurisdiction where the State is ousted of jurisdiction and a Federal "island" or enclave is formed within the boundaries of the State. Between these extremes lie intermediate variations of dual sovereignty: 2 Story on Constitution (5th ed., 1891), §§1214-1235, pp. 125-136.

For statistical purposes, Federal areas are divided into four categories. These categories and their definitions, based upon judicial decisions and Federal administrative usage and applications, are as follows, Chapter III of Part I of the Report of the Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States, supra, April 1956:

*"Exclusive legislative jurisdiction*—This term is applied when the Federal Government possesses, by whichever method acquired, all of the authority of the State, and in which the State concerned has not reserved to itself the right to exercise any of the authority concurrently with the United States except the right to serve civil or criminal process in the area for activities which occurred outside the area.

*"Concurrent legislative jurisdiction*—This term is applied in those instances wherein in granting to the United States authority which would otherwise amount to exclusive legislative jurisdiction over an area the State concerned has reserved to itself the right to exercise, concurrently with the United States, all of the same authority.

*"Partial legislative jurisdiction*—This term is applied in those instances wherein the Federal Government has been granted for exercise by it over an area in a State certain of the State's authority, but where

the State concerned has reserved to itself the right to exercise, by itself or concurrently with the United States, other authority constituting more than merely the right to serve civil or criminal process in the area (e.g., the right to tax private property).

*"Proprietorial interest only*—This term is applied to those instances wherein the Federal Government has acquired some right or title to an area in a State but has not obtained any measure of the State's authority over the area. In applying this definition, recognition should be given to the fact that the United States, by virtue of its functions and authority under various provisions of the Constitution, has many powers and immunities not possessed by ordinary landholders with respect to areas in which it acquires an interest, and of the further fact that all its properties and functions are held or performed in a governmental rather than a proprietary capacity."

In Pennsylvania the Federal Government at present has numerous installations consisting of hundreds of thousands of acres of land. Naturally, the category in which any particular parcel of land falls is a question of fact to be decided on the facts and the law surrounding each parcel and its acquisition by the Federal Government.

The various Pennsylvania statutes ceding land and jurisdiction to the United States are collected for the most part in title 74 of Purdon's Pennsylvania Statutes Annotated (Permanent Edition, 1953). The earliest statutes ceding exclusive jurisdiction to lands not over 10 acres for post offices, custom houses, dams and locks and other structures were the Act of June 13, 1883, P. L. 118, and the Act of May 18, 1887, P. L. 121. Under the Federal law, the Act of June 30, 1930, 46 Stat. 828, as amended, 40 U. S. C. §255, the acceptance of exclusive jurisdiction becomes effective when the head of the department involved files a notice of ac-

ceptance of such jurisdiction with the Governor. These notices are filed with the Department of Internal Affairs.

The question whether residents of a Federal reservation are entitled to free education in the public schools was first raised in Opinion of the Justices, 42 Mass. 580 (1841), in which the Justices of the Supreme Judicial Court of Massachusetts stated, at page 583:

"We are of opinion that persons residing on lands purchased by, or ceded to, the United States for navy yards, forts and arsenals, where there is no other reservation of jurisdiction to the State . . . are not entitled to the benefits of the common schools for their children, in the towns in which such lands are situated." See also Newcomb v. Rockport, 183 Mass. 74, 66 N. E. 587 (1903).

In order to ameliorate some of the practical consequences of exclusive jurisdiction, Congress has enacted legislation permitting the extension and application of State laws to lands under exclusive aegis of the Federal Government. By Act of the Congress of the United States of October 9, 1940, 54 Stat. 1059-1061, re-enacted by codification July 30, 1947, 61 Stat. 641, 4 U. S. C. §§105-106, commonly known as the Buck Act, the Federal Government restored to the States and any duly constituted taxing authority therein, the power to levy and collect sales and income taxes in any Federal area within the States to the same extent and with the same effect as though such area was not a Federal area. Significantly, the Buck Act specifically reserved exclusive Federal jurisdiction notwithstanding the authority granted to the States to impose certain taxes.

By the Act of June 25, 1947, P. L. 1145, as amended, 53 PS §6851, et seq., the Commonwealth authorized school districts to levy, assess and collect taxes on

persons, transactions, occupations, privileges, subjects and personal property within the limits of the school district, except as those are or become subject to a State tax or license fee. The Buck Act was a step toward removal of tax inequities caused by the existence of Federal "islands" in the States. The Pennsylvania Act of June 25, 1947, attempted to secure the additional revenue thus made available.

In further recognition of the financial burden imposed upon local and State educational agencies by Federal acquisition of real property, Congress in 1950 enacted legislation to provide financial assistance for local educational agencies burdened by the impact of Federal activities where: "(1) The revenues available to such agencies from local sources have been reduced as the result of the acquisition of real property by the United States; or (2) such agencies provide education for children residing on Federal property; or (3) such agencies provide education for children whose parents are employed on Federal property; or (4) there has been a sudden and substantial increase in school attendance as the result of Federal activities": Act of Congress of September 30, 1950, c. 1124, 64 Stat. 1100, 20 U. S. C. §236.

Cases in other jurisdictions are in accord with the Schwartz case where exclusive jurisdiction is held by the Federal Government: School Dist. No. 20 of Pennington County v. Steele, 46 S. D. 589, 195 N. W. 448 (1923); State ex rel. Moore v. Board of Education of Euclid City School Dist., 57 N. E. 2d 118 (Ohio, 1944); McGwinn v. Board of Education of Cleveland City School Dist., 33 Ohio O. 433, 69 N. E. 2d 391 (1945), and Miller v. Hickory Grove School Board, 162 Kan. 528, 178 P. 2d 214 (1947).

For the rule in cases of other than exclusive jurisdiction, Tagge v. Gulzow, 132 Neb. 276, 271 N. W. 803 (1937), is in point. In that case, the Federal

Government owned certain land in the name of the Nebraska Rural Rehabilitation Corporation which was used for farmsteads for needy persons on relief. Plaintiffs brought suit for an injunction to restrain school officials from preventing children living on such land from attending school without payment of tuition. The record fails to show the type of jurisdiction ceded to the Federal Government. Defendants argued that the land was taken in exclusive jurisdiction. In affirming the lower court order granting an injunction, the Supreme Court of Nebraska decided as follows:

"The farmstead lands, like other lands in the school district, are used for agricultural purposes. The occupants of the farmsteads, like other farmers in the school district, are using lands in individual pursuits, not as representatives of the federal government in the exercise of exclusive sovereignty. The agricultural departments of the state and the nation, acting jointly, are not exercising exclusive legislative and executive powers of the United States over the lands and occupants in the farmstead area. For the purposes of civil and criminal jursidiction and of political rights, the state has not lost its jurisdiction over the farmsteads and the occupants thereof. The status of plaintiffs as residents is the same as that of others in the school district. Plaintiffs are residents thereof and their children of school age are entitled to common school privileges without payment of tuition." See notes: 17 Neb. L. Bul. 86 (1938) ; 14 Wash. L. Rev. (pt. 1) 1 (1939) ; and 17 Tenn. L. Rev. 328 (1942).

Similar questions have been passed upon by other Attorneys General. The rule of the Schwartz case has been expressed as the law of several States where Federal lands were under exclusive jurisdiction: Op. A.G., Ind., p. 411, No. 66 (1948) ; 5 Op. A.G., Md. 129 (1920) ; 27 id. 116 (1942) ; and Op. A.G., N. J., No. 37 (Nov. 26, 1951). On the other hand, where the Federal

Government did not have exclusive jurisdiction of Federally owned areas, several Attorneys General have held that children living thereon are entitled to treatment as State residents in relation to public school education: 5 Op. A.G. Md. 136 (1920); Op. A.G., N. M., Sept. 2, 1914; and Op. A.G., Ohio, p. 193, No. 479 (1949). Compare Op. A.G., Ill., Nos. 1284, p. 491 (Dec. 16, 1927) and 2722, p. 363 (July 22, 1930).

In response to your inquiry and for the purposes of this opinion, we define the categories of Federal legislative jurisdiction and the extent of the Commonwealth's duty to reimburse school districts for the education of children living on land in each category as follows:

1. *Exclusive jurisdiction* — This term is applied when the Federal Government possesses, by whichever method acquired, all of the authority of the State, and the State has not reserved to itself the right to exercise any of the authority concurrently with the United States, except the right to serve civil or criminal process in the area for activities which occurred outside the area, and, by virtue of the Buck Act, the right to collect sales and income taxes from persons residing thereon. The rule of the Schwartz case applies to this category and the State is not authorized to reimburse school districts on account of children living on land within this category. Responsibility to provide for the education of these children rests with the Federal Government.

2. *Proprietorial interest only*—In this category the only interest acquired by the Federal Government is that of ownership or use of land as an ordinary landholder. All of the State's legislative jurisdiction, such as the power to serve judicial process, criminal jurisdiction, control of adoption and divorce and the general exercise of the police power, is retained by the State. Children living on land within this category are resi-

dents of the school district in which the land is located and are entitled to free, public education. Reimbursements on account of instruction of these children are payable under section 2502 of the Public School Code.

3. *Concurrent jurisdiction* — This term is applied when the State has retained sovereign legislative authority unimpaired by that given to the Federal Government. The State and the Federal Governments concurrently exercise all of the same authority. Children living on land within this category are residents of the school district in which the land is located and are entitled to free, public education. Reimbursements on account of instruction of these children are payable under section 2502 of the Public School Code.

4. *Partial jurisdiction*—This category is impossible of general definition since its precise definition will depend upon the specific facts presented in each case. Where it is contended that partial jurisdiction exists, the facts should be presented to this department for determination.

We are therefore of the opinion and you are accordingly advised that where the Federal Government retains exclusive jurisdiction over land within the Commonwealth, children of school age living thereon are not entitled to free, public education; however, where the Federal Government holds land under concurrent jurisdiction or has a proprietorial interest only in the land, children of school age living thereon are residents of the school district within which such lands are located and are entitled to free, public education and reimbursements on account of instruction of these children are payable under section 2502 of the Public School Code. As to lands contended to fall within the category of partial jurisdiction, we will decide each on its own facts when presented to us for determination.