J-A28024-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID RAINELLI, JR. | : | No. 1853 WDA 2019 |

Appeal from the Order Entered December 17, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0000012-2019

BEFORE: OLSON, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY MURRAY, J.:                    FILED JANUARY 12, 2021

The Commonwealth appeals from the trial court's order dismissing the charges filed against Appellee, David Rainelli, Jr. (Rainelli), for lack of jurisdiction. After careful review, we affirm.

The trial court summarized the procedural posture of this case as follows:

> [Rainelli] was charged on September 21, 2018 with two counts of Aggravated Assault, two counts of Terroristic Threats, one count of Resisting Arrest, two counts of Harassment, and one count of Disorderly Conduct as a result of [an] incident that occurred at the Veterans Affairs Medical Center in O'Hara Township in Allegheny County, Pennsylvania [(VA Medical Center)].[1]
>
> On July 8, 2019, [Rainelli's] original trial counsel filed a motion to dismiss the charges based on improper venue and jurisdiction. This [c]ourt denied that motion on September 18,

_____

[1] 18 Pa.C.S.A. §§ 2702(a)(3), 2706(a)(1), 5104, 2709(a)(1), and 5503(a)(1).

2019. [Rainelli] then file a pro se Petition for Habeas Corpus on October 11, 2019, which this [c]ourt subsequently denied. On October 16, 2019, this [c]ourt granted a motion filed by original trial counsel to withdraw her appearance in this case and this [c]ourt appointed Corrie Woods, Esquire to continue the representation of [Rainelli]. On November 20, 2019, [Rainelli] filed a counseled Motion to Dismiss for Lack of Jurisdiction Over Federal Enclave raising new factual and legal issues. The Commonwealth filed a response on December 16, 2019. After hearing argument on the motion, on December 17, 2019, this [c]ourt granted the motion to dismiss. The Commonwealth appeal followed.

Trial Court Opinion, 5/21/20, at 1-2 (footnote added).

Both the Commonwealth and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925. On appeal, the Commonwealth presents a single issue for review:

Whether the Trial Court erred in concluding that proper procedures were not followed by the Commonwealth to establish concurrent jurisdiction over the federal Veterans Affairs property at issue where: (1) the federal government agreed to the retrocession of jurisdictional authority over the property at issue; (2) the Pennsylvania Legislature enacted legislation giving the Executive the authority to accept the federal government's offer of jurisdiction over the property and; (3) the federal government's offer and grant of jurisdiction were accepted by the Commonwealth?

Commonwealth Brief at 4.

The Commonwealth claims the trial court erred "in concluding that there was insufficient evidence that Pennsylvania had established concurrent jurisdiction over the federal [VA] Medical Center where [Rainelli] was alleged to have committed his crimes." Commonwealth Brief at 13. The Commonwealth argues:

In the [c]ourt below, the Commonwealth demonstrated that the Pennsylvania Legislature enacted legislation consenting to the retrocession of jurisdiction from the federal government over this property and giving the Executive the authority to accept that retrocession. The Commonwealth also demonstrated that the federal government acknowledged the Commonwealth's consent to the retrocession of jurisdiction over this property, and, in response, manifested its own unequivocal intent to divest itself of exclusive jurisdiction and to establish concurrent jurisdiction with the Commonwealth of Pennsylvania over this property. Finally, the Commonwealth demonstrated that the Executive signed a public notice stating that he intended to accept jurisdiction following a 30-day period for public commentary and the Commonwealth also demonstrated that, following that 30-day period, agents of the parties engaged in actions that are consistent with the transfer of jurisdiction.

Accordingly, the Commonwealth produced sufficient evidence in the [c]ourt below for the [t]rial [c]ourt to conclude that Pennsylvania accepted the retrocession of jurisdiction from the federal government and established concurrent jurisdiction over the property where [Rainelli] was alleged to have committed his crimes. Thus, the [t]rial [c]ourt erred in dismissing [Rainelli's] charges prior to trial based upon a perceived lack of jurisdiction of the Commonwealth of Pennsylvania.

Id. at 13-14.

Rainelli counters that this Court "should affirm the trial court's order" because "the Commonwealth failed to establish that Governor Shapp actually accepted the retrocession." Rainelli's Brief at 18.

As the issue before us presents a factual inquiry, we apply a deferential standard of review. See Commonwealth v. Neysmith, 192 A.3d 184, 192 (Pa. Super. 2018) (applying a deferential standard where factual aspects predominate). Thus, "we . . . shall reverse only for an abuse of discretion. We have long held that mere errors in judgment do not amount to abuse of discretion; instead, we look for manifest unreasonableness, or partiality,

- 3 -

prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." Id. (citations omitted).

Pertinently, the Pennsylvania Crimes Code states that "a person may be convicted under the law of this Commonwealth of an offense committed by his own conduct . . . if . . . the conduct which is an element of the offense or the result which . . . occurs within this Commonwealth[.]" 18 Pa.C.S.A. § 102(a)(1).

However, the federal enclave doctrine grants exclusive jurisdiction to the federal government when land has been purchased by the United States:

> Congress shall have Power . . . [t]o exercise exclusive Legislation . . . over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings[.]

U.S.C.A. Const. Art. I § 8, cl. 17.

"Thus if the United States acquires with the 'consent' of the state legislature land within the borders of that State by purchase or condemnation for any of the purposes mentioned in Art. I, [§] 8, cl. 17 . . . the jurisdiction of the Federal Government becomes 'exclusive.'" Paul v. United States, 83 S.Ct. 426, 438 (1963); see also Surplus Trading Co. v. Cook, 50 S.Ct. 455, 457 (1930) ("[I]t long has been settled that, where lands for such a purpose are purchased by the United States with the consent of the state legislature, the jurisdiction theretofore residing in the state passes, in virtue of the constitutional provision, to the United States, thereby making the jurisdiction of the latter the sole jurisdiction."). "The power of Congress over federal

enclaves that come within the scope of Art. I, [§] 8, cl. 17, is obviously the same as the power of Congress over the District of Columbia." Paul, 83 S.Ct. at 437. Accordingly, "Pennsylvania's criminal statutes do not apply" to federal enclaves "any more than to a sister state." Commonwealth v. Mangum, 332 A.2d 467, 468 (Pa. Super. 1974).

Instantly, the trial court explained that it dismissed the charges against Rainelli because it "was not presented with sufficient evidence to determine that the retrocession of jurisdiction was properly completed, [and was thus] unable to rule that the Commonwealth properly obtained concurrent jurisdiction over the VA property. Accordingly, this [c]ourt ruled that, under the record before it, the Commonwealth of Pennsylvania does not have jurisdiction to prosecute [Rainelli] for any state court offenses that occurred on that property." Trial Court Opinion, 5/21/20, at 8 (emphasis added). Upon review, we discern no error in the trial court's determination "that the credible and competent evidence of record did not establish that the Commonwealth of Pennsylvania enjoyed concurrent jurisdiction over the VA [Medical Center] nor did it establish that the federal government had 'retroceded' jurisdiction[.]" Id. at 2.

The facts established in the trial court are largely undisputed. On January 26, 1923, the United States purchased the property for the VA Medical Center. See Rainelli's Motion to Dismiss for Lack of Jurisdiction, 11/20/19, at Exhibit B; Commonwealth Brief at 18. The General Assembly passed Act 407 of 1923 which provided:

- 5 -

> The consent of the Commonwealth of Pennsylvania is hereby granted to the purchase by the Government of the United States of a certain tract of land, containing approximately one hundred and forty-seven and five hundred and forty-three thousandths acres, for use in the care and treatment of discharged sick and disabled soldiers, or for other uses of the United States: said tract of land being situate in O'Hara Township, Allegheny County, Pennsylvania, and bounded and described as follows . . .

74 P.S. § 91 (legal description of land omitted); see also Schwartz v. O'Hara TP. School Dist. et al., 100 A.2d 621, 622 (Pa. 1953) ("By Act of July 2, 1923, P.L. 74 P.S. §§ 91, 92, the Commonwealth of Pennsylvania ceded exclusive jurisdiction of some 147 acres of land situate in O'Hara Township to the United States for the construction thereon of a veterans hospital under the control and supervision of the Veterans Administration.").

By ceding jurisdiction, the General Assembly rendered the VA Medical Center a federal enclave within Pennsylvania:

> Exclusive jurisdiction over the lands so purchased is hereby ceded to the United States by the Commonwealth of Pennsylvania, and said lands shall be exempt from the payment of all taxes, State and local: Provided, That the Commonwealth of Pennsylvania shall retain a concurrent jurisdiction with the United States, over the lands so acquired by the United States, for the purpose of serving of all civil processes: And provided further, That such criminal processes as may issue under the authority of the Commonwealth, against any person or persons charged with crimes committed without the area so acquired, may be executed therein, in the same manner as though this cession had not been granted.

74 P.S. § 92; see also Schwartz, 100 A.2d at 622 ("The only reservation to the Commonwealth was of concurrent jurisdiction within the ceded area for the service of civil process and of criminal process for crimes committed without the area.").

In 1977, United States VA Administrator Max Cleland wrote a letter to Pennsylvania Governor Milton Shapp expressing the federal government's desire to retrocede jurisdiction over the VA Medical Center to Pennsylvania. On August 5, 1977, the General Assembly gave its consent to Governor Shapp to accept the retrocession of jurisdiction and mandated procedures for acceptance:

> The consent of the Commonwealth of Pennsylvania is hereby given to the retrocession of jurisdiction by the United States over land within the boundaries of the Commonwealth. The Governor is hereby authorized to accept for the Commonwealth such retrocession to partial, concurrent, or exclusive jurisdiction.
>
> *       *       *
>
> Retrocession of jurisdiction shall be effected upon the completion of the following procedure:
>
> (1) Written notice shall be filed with the Governor by the United States, or any department or agency thereof, in accordance with applicable acts of Congress.
>
> (2) The Governor shall give public notice of retrocession of jurisdiction by publication in the Pennsylvania Bulletin.
>
> (3) Written acceptance shall not be made less than 30 days after public notice of retrocession.

74 P.S. §§ 3, 4.[2]

On January 14, 1978, Governor Shapp published the following notice in the Pennsylvania Bulletin:

_____

[2] The parties agree that the Commonwealth met its burden as to the first two requirements for retrocession of jurisdiction; the dispute is whether the Commonwealth presented evidence as to the third requirement regarding that written acceptance of retrocession after 30 days of publication.

In accordance with the Act of August 5, 1977, P.L. — No. 47, notice is hereby given that I intend to accept concurrent jurisdiction over certain lands in which the United States has an interest. I intend to accept this jurisdiction by signing and dating a letter to me from Max Cleland, Administrator of Veterans Affairs, Washington D.C., which reads in pertinent part:

Dear Governor Shapp:

Pursuant to the authority vested in me by Public Law 93-82, 38 United States Code 5007, on behalf of the United States, I hereby retrocede and relinquish to the Commonwealth of Pennsylvania, such measure of legislative jurisdiction as is necessary to establish concurrent jurisdiction over the following lands comprising the eight Veterans Administration Hospitals in Pennsylvania which are under the exclusive jurisdiction of the Federal Government:

Exclusive jurisdiction vested in the United States over the lands of the Veterans Administration Hospitals at Aspinwall . . . at the time of acquisition by virtue of Article I, Section 8, Clause 17 of the Constitution. Exclusive jurisdiction of the Aspinwall property was ceded by Pennsylvania Act of Cession, July 2, 1923 (P.L. 987, section 2, Purdon's Pennsylvania Statutes Annotated, title 74, section 92). . . . .

Retrocession to concurrent jurisdiction over said lands shall become effective upon your written acceptance. Consent of the Commonwealth is embodied in the Act of August 5, 1977, P.L. No. 47 of the Pennsylvania General Assembly. It is requested that the original of this letter be returned duly executed for Veterans Administration records.

Sincerely,

MAX CLELAND

Administrator

I do not intend to accept this retrocession of jurisdiction less than 30 days after publication of this notice in the Pennsylvania Bulletin.

Interested persons are invited to submit written comments, suggestions or objections regarding this retrocession of jurisdiction to The Governor's Office 225 Capitol Building, Harrisburg, PA 17120, within 30 days after the date of publication of this notice in the Pennsylvania Bulletin.

[Governor Shapp's Signature]

Governor

Commonwealth Response to Motion to Dismiss, 12/16/19, Exhibit 1.

Consistent with the foregoing, the Commonwealth had to produce evidence of Governor Shapp's written acceptance 30 days after the public notice in the January 14, 1978 Pennsylvania Bulletin in order to establish jurisdiction. See 74 P.S. § 4(3). The trial court determined that the Commonwealth failed to do so, and thus dismissed Rainelli's charges for lack of jurisdiction. Under these circumstances, the trial court did not abuse its discretion. Neysmith, 192 A.3d at 192.

In response to Rainelli's motion to dismiss, the Commonwealth submitted copies of Governor Shapp's notice in the January 14, 1978 Pennsylvania Bulletin and the relevant Pennsylvania statutes. See Commonwealth Response to Motion to Dismiss, 12/16/19, Exhibits 1 & 2. The only other evidence the Commonwealth proffered was a May 17, 1978 Pennsylvania State Police Special Order concerning retrocession of jurisdiction. See id., Exhibit 3. However, the Commonwealth did not authenticate the Special Order and "merely put [it] in as persuasive

authority."  N.T., 12/17/19, at 29;[3] see also Commonwealth Response to Motion to Dismiss, 12/16/19, at ¶ 17 ("[A]ttached is persuasive evidence that concurrent jurisdiction was accepted.").

Given this record, and mindful of our deferential standard of review, we conclude that the trial court did not commit an abuse of discretion. Specifically, the trial court did not err in finding that because "written acceptance was required by the Pennsylvania legislature before the retrocession became official," and "nowhere in the record . . . is the required written acceptance of retrocession executed by the governor 'not less than 30 days after public notice of retrocession (after February 13, 1978).'" Trial Court Opinion, 5/21/20, at 8.  Our review reveals the court was "not presented with sufficient evidence to determine that the retrocession of jurisdiction was properly completed[.]"  Id.

In sum, we agree with the trial court in this case that the Commonwealth did not produce evidence of Governor Shapp's written acceptance of

_____

[3] The assistant district attorney stated:

> As it relates to Exhibit Three, I merely put that in as persuasive authority.  If Your Honor does not want to take that into consideration, that is of your choosing.  I didn't intend to authenticate a document from 197[8] which at this point qualifies it as an ancient document.  I would simply be relying on Exhibits One and Two as the correct law in this case which does not need to be authenticated for purposes of the proceedings.

N.T., 12/17/19, at 29.

retrocession as mandated by the General Assembly to establish concurrent jurisdiction. Therefore, we affirm the dismissal of Rainelli's charges.

Order affirmed.


Judge McCaffery joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/12/2021